385 F.2d 969
 CHANNEL 9 SYRACUSE, INC., Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
Eastern Microwave, Incorporated, Auburn Cablevision Corporation, New York-Penn Microwave Corporation, General Electric Cablevision Corporation and Unicable, Incorporated, Intervenors.
CHANNEL 9 SYRACUSE, INC., Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION, and United States of America, Respondents,
Eastern Microwave, Incorporated, Auburn Cablevision Corporation and New York-Penn Microwave Corporation, Intervenors.
 No. 20843.
 No. 20915.
 United States Court of Appeals District of Columbia Circuit.
 Argued June 22, 1967.
 Decided September 26, 1967.
 Petition for Rehearing Denied October 30, 1967.
 
 Mr. John P. Bankson, Jr., Washington, D. C., with whom Messrs. Arthur H. Schroeder and William M. Barnard, Washington, D. C., were on the brief, for appellant in No. 20,843 and petitioner in No. 20,915.
 Mr. Stuart F. Feldstein, Counsel, F. C. C., with whom Asst. Atty. Gen. Donald F. Turner and Messrs. Henry Geller, Gen. Counsel, and John H. Conlin, Associate Gen. Counsel, F. C. C., and Howard E. Shapiro, Atty., Dept. of Justice, were on the brief, for appellee in No. 20,843 and respondents in No. 20,915. Mrs. Lenore G. Ehrig, Counsel, F. C. C., also entered an appearance for appellee in No. 20,843 and respondent Federal Communications Commission in No. 20,915.
 Mr. Lewis I. Cohen, Washington, D. C., attorney for intervenors Auburn Cablevision Corp. and New York-Penn Microwave Corp., argued on behalf of all intervenors.
 Messrs. William P. Sims, Jr. and John D. Matthews, Washington, D. C., were on the brief for intervenor Eastern Microwave, Inc. Mr. Daniel M. Redmond, Washington, D. C., also entered an appearance for intervenor Eastern Microwave, Inc.
 Messrs. James A. McKenna, Jr., Vernon L. Wilkinson and Robert W. Coll, Washington, D. C., were on the brief for intervenor General Electric Cablevision Corp.
 Mr. William J. Kenney, Washington, D. C., entered an appearance for intervenor Unicable, Inc.
 Before FAHY, Senior Circuit Judge, and WRIGHT and ROBINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 On February 24, 1967, the Federal Communications Commission issued a memorandum opinion and order which (1) granted the applications of New York-Penn Microwave Corporation and Eastern Microwave, Incorporated for new microwave facilities to provide non-network New York City and Canadian television signals to community antenna television (CATV) systems in Auburn and Oswego, New York, and (2) granted the petitions of Unicable, Incorporated, Auburn Cablevision Corporation and General Electric Cablevision Corporation for waiver of the Commission's CATV rules and for permission to carry the "distant" signals to be provided by the aforementioned microwave systems.[1] Channel 9 Syracuse, Inc., a party to the proceedings before the Commission, has appealed from the grant of the microwave applications (No. 20,843),[2] and petitioned for review of the grant of the waiver requests and concomitant permission to carry the "distant" signals to be supplied by the microwave systems (No. 20,915).[3] We affirm the Commission.
 
 
 2
 * After an extended rule-making proceeding the Commission asserted jurisdiction over all CATV systems and adopted a comprehensive regulatory scheme.[4] Under the Commission's regulations a CATV system operating within the "Grade A contour" of a television station in one of the 100 largest television markets is prohibited from extending the signals of distant television stations beyond its "Grade B contour"[5] unless the Commission has previously determined, after a full evidentiary hearing, that such carriage will be "consistent with the public interest, and specifically the establishment and healthy maintenance of television broadcast service in the area." 47 C.F.R. § 74.1107 (Supp.1967).[6] Thus the Commission is afforded an opportunity to decide on a case-by-case basis whether the possible adverse effects from CATV on UHF and VHF television service in the particular area are outweighed by the contribution to the public interest which would be made by the proposed CATV service.
 
 
 3
 In some instances, however, the Commission recognized that it could make this determination without resorting to a full evidentiary hearing. It therefore allowed for waiver of the rules when warranted by the circumstances. 47 C.F.R. § 74.1109 (Supp.1967). Although a petition for waiver may be submitted informally, Section 74.1109(c) (1) provides:
 
 
 4
 "The petition shall state the relief requested and may contain alternative requests. It shall state fully and precisely all pertinent facts and considerations relied upon to demonstrate the need for the relief requested and to support a determination that a grant of such relief would serve the public interest. Factual allegations shall be supported by affidavit of a person or persons with actual knowledge of the facts, and exhibits shall be verified by the person who prepares them."[7]
 
 
 5
 On this appeal it is common ground that Sections 74.1107 and 74.1109 apply to the CATV applications in this case.
 
 II
 
 6
 Appellant is the operator of a VHF station, Channel 9, in Syracuse, New York. Syracuse is ranked as the 35th largest television market and has, in addition to appellant's station, two other VHF stations and two UHF stations, one of which is presently under construction. The Syracuse Urbanized Area, which includes the communities of East Syracuse, Solvay and Camillus, has a population of 333,285.
 
 
 7
 Oswego, one of the cities to be served by the new CATV and microwave facilities, is located approximately 35 miles from Syracuse in Oswego County, which county has a total population of 86,118. Oswego itself has a population of 22,155. Oswego County is outside the Syracuse Urbanized Area but is part of the Syracuse Metropolitan Statistical Area which has a population of 563,781. Unicable, Incorporated, a CATV system in Oswego, sought permission to carry the "distant" signals of four non-network New York City VHF stations. It also sought a waiver of the evidentiary hearing requirement of Section 74.1107. These "distant" signals were to be supplied by Eastern Microwave, Incorporated and New York-Penn Microwave, which sought permission to construct the facilities necessary to supply the signals in question. In its petition Unicable showed that Oswego is 35 miles from Syracuse; that Oswego is completely separate from Syracuse; that Oswego is on the fringe of the Syracuse stations' Grade A service areas; that, because of the terrain, off-the-air reception of the Syracuse stations, especially the UHF station, is generally poor; that the CATV system presently carries all the Syracuse stations and this aids reception of the UHF station; and that carriage of "distant" signals is needed to make the system economically viable. This petition was supported by the affidavit of Richard Conde, president of Unicable.
 
 
 8
 Oppositions to Unicable's petition for waiver were filed by appellant and by Meredith Syracuse Television Corporation, licensee of a VHF station, and Channel 30, Inc., an applicant for UHF television Channel 43 in Syracuse.[8] These oppositions contended that the waiver petition failed to satisfy the showing necessary for waiver, and Channel 30, the UHF applicant, specifically opposed any fragmentation of the Syracuse market by the importation of distant signals. On this basis the Commission found:
 
 
 9
 "* * * Since Unicable's system is in the relatively small community [of Oswego] on the fringe of the Syracuse market, its carriage of New York City independents and educational signals in order to provide diversified programming to Oswego viewers will have slight, if any, impact upon UHF development in the market. Under these circumstances, carriage of the New York City signals in Oswego will have little impact upon the development of UHF television in Syracuse, and will offer Oswego viewers more diversified programming. * * *"
 
 
 10
 Having found the carriage of the "distant" signals to be warranted, the Commission granted the requests of New York-Penn and Eastern Microwave for permission to construct the necessary microwave facilities.
 
 
 11
 Auburn, the other city to served by CATV and microwave facilities, has a population of approximately 34,200. It is located about 25 miles from Syracuse in Cayuga County which has a population of about 74,000. It is not part of the Syracuse Urbanized Area or the Syracuse Metropolitan Statistical Area. In its petition for waiver of the evidentiary hearing requirement of Section 74.1107 which accompanied its application for permission to import three "distant" signals from New York City, Auburn Cablevision alleged that carriage of these stations would improve their reception in Auburn; that the Syracuse stations receive no advertising revenue from Auburn; that Syracuse and Auburn are quite separate from both a geographic and a realistic viewpoint; and that the Syracuse stations do not program for Auburn. It further stated that carriage of the Syracuse UHF stations could only serve to enhance those stations' positions in Auburn. This was all attested to in the affidavit of Floyd J. Keesee, secretary-treasurer of Auburn Cablevision. The petition of General Electric Cablevision for waiver of the Commission's rules and permission to carry three New York City stations and one Canadian station in Auburn was found defective. Nevertheless, the Commission considered the petition in the light of the more detailed showing made by Auburn Cablevision. New York-Penn Microwave sought permission to construct microwave facilities to supply the "distant" signals to these Auburn CATV stations.
 
 
 12
 Oppositions to these petitions were filed by appellant and by Channel 30, Inc. and Meredith Syracuse Broadcasting System. While generally challenging the adequacy of the petitions for waiver, Channel 30, Inc., then a UHF applicant, specifically stated that it planned a signal adequate to serve Auburn, and opposed any fragmentation of the Auburn market by the importation of "distant" signals.
 
 
 13
 On this record the Commission waived the evidentiary hearing, finding that Auburn was outside Syracuse's Urbanized Area and
 
 
 14
 "also outside the Standard Metropolitan Statistical Area of Syracuse and in Cayuga County where New York City television stations are already being viewed on existing cable facilities. Carriage of New York City independent programming on the proposed Auburn systems will have little additional effect upon UHF development in Syracuse. * * *"
 
 
 15
 Concluding that Auburn Cablevision and General Electric Cablevision should be allowed to carry the "distant" signals requested, the Commission granted the request of New York-Penn Microwave for permission to construct the microwave facilities necessary to supply the "distant" signals.
 
 III
 
 16
 Appellant urges that the Commission's decision is arbitrary, capricious and an abuse of discretion because the record is insufficient to support a finding that waiver of the evidentiary hearing required by Section 74.1107(a) of the Commission's rules will serve the public interest, as required by Section 74.1109(c) (1). Appellant also taxes the Commission with failure to define with specificity adequate reasons for its decision. As to the microwave companies, appellant argues that the record before the Commission is insufficient to support the finding required by Section 214(a)[9] of the Communications Act that the public convenience or necessity requires the grant of their applications and that such grant is inconsistent with Section 307 (b)[10] of the Act.
 
 
 17
 Appellant relies heavily on the dissenting statement of Commissioner Cox, who felt that the petitioners for waiver "have not made the kind of showings we normally require for waiver of our rules." Commissioner Cox protested that the petitioners' pleadings "contain nothing but vague conclusionary statements by interested parties, unsupported by sworn engineering or other factual showings of matters demonstrating that our rules should not be applied here."
 
 
 18
 Appellant does not attack the relevant CATV regulations promulgated by the Commission. While those regulations anticipated that ordinarily permission to import "distant" signals would be granted only after an evidentiary hearing, the regulations clearly provide for waiver of the rules when warranted by the circumstances. 47 C.F.R. § 74.1109. In its memorandum opinion denying numerous petitions for reconsideration of the Second Report and Order, the Commission clearly stated that, where the Grade A contour encompasses localities distinct from the market area upon which UHF operations would be based, the importation of "distant" signals to the separated community would not necessarily raise public interest questions.[11] Here both Auburn and Oswego are separate communities from Syracuse and both are without television stations of their own. The record before the Commission at the time the waivers were granted shows that the Syracuse stations received no advertising revenue from Auburn; that the Syracuse stations do not program for Auburn; that carriage of the Syracuse stations by CATV would improve their reception in Oswego and Auburn, particularly the UHF stations; that the CATV carriage of these stations would serve to enhance their positions generally, not only in Auburn but in Oswego as well; and that carriage of "distant" signals is needed to make the CATV systems in Auburn and Oswego economically viable. All this was sworn to by affidavits attached to the applications.
 
 
 19
 Appellant does not controvert these statements. It argues instead that the waiver requests were not sufficiently detailed and factual to support a waiver. Resting on this position, it failed before the Commission to make an offer of any evidence sufficient to show that CATV in Auburn and Oswego would have a significant adverse impact on television broadcasting in Syracuse. Appellant suggests that as an objector to the waiver it had no duty to make any showing. But appellant knew that the Commission's rules provided for waivers, and it was cognizant of the sworn allegations made by the petitions before the Commission in their requests for waivers. While the requests for waivers certainly left something to be desired in specificity, and as a general rule the Commission should require more, nevertheless we cannot say that these allegations were an insufficient basis on which to predicate waiver. Certainly they were sufficient to place interested parties on notice that waivers might be granted. There arose, therefore, an obligation on the part of those opposing the waivers to make a sufficient factual record, by affidavit or otherwise, to demonstrate the necessity for an evidentiary hearing. Compare Rule 56(e), FED.R.CIV.P. See Springfield Television Broadcasting Corp. v. F.C.C., 117 U.S.App.D.C. 214, 328 F.2d 186 (1964).
 
 
 20
 Appellant's assertion that the Commission failed to define with specificity the reasons for its decision, particularly with reference to the public interest questions, is not without some basis. The Commission did not assert specifically that it would be in the public interest to grant the waivers. It did, however, show the public benefits which would come from authorizing the CATV systems. It referred to diversity of programming, improved picture quality, and benefits to, and lack of adverse impact on, the Syracuse UHF stations themselves because their programs would be required to be carried to Auburn and Oswego by CATV. It pointed to the fact that Auburn and Oswego were without television stations. These findings, in our judgment, were sufficient although, as we have indicated, a more precise statement of the public interest considerations supporting the granting of the waivers could have been made.
 
 
 21
 Appellant's argument that the record was insufficient to support the grant of the microwave applications and that the Commission made no separate finding that the public interest required the microwave grants cannot be separated from its attack on the CATV waivers themselves. The microwave applications and the CATV applications are parts of the same package. The considerations which permitted the granting of one support the grant of the other. Without microwave there simply would not be CATV in Auburn or Oswego.
 
 
 22
 Channel 9's reliance on Carter Mountain Transmission Corp. v. F.C.C., 116 U.S.App.D.C. 93, 321 F.2d 359, cert. denied, 375 U.S. 951, 84 S.Ct. 442, 11 L. Ed.2d 312 (1963), is misplaced. Indeed, Carter Mountain supports the Commission's holding here. In Carter Mountain this court affirmed the Commission's power to deny a microwave application because the service it proposed to render would have had an adverse effect on a local television station. Here the Commission found that the granting of the microwave applications along with the CATV waivers would actually have a beneficial effect on the Syracuse television stations because by carrying those stations CATV would bring better reception to a larger audience.
 
 
 23
 Appellant's final argument that Section 309(d) of the Communications Act, 47 U.S.C. § 309(d) (1964), required a hearing before a grant could be made in this case must also be rejected. Mere allegations of competitive injury do not require an evidentiary hearing. Lee v. F.C.C., 126 U.S.App.D.C. ___, 374 F.2d 259 (1967); KGMO Radio-Television, Inc. v. F.C.C., 119 U.S.App.D.C. 1, 336 F.2d 920 (1964). Here the Commission found that, because of the distance between Syracuse and Auburn and Oswego, injury was unlikely. In the absence of countervailing evidence, that finding is a reasonable one.
 
 
 24
 We affirm the Commission's orders in these cases in deference to its expertise in its assigned area. We do suggest, however, that in the emerging field of CATV, with respect to petitions for waiver of evidentiary hearings, the Commission should require greater factual specificity in petitions for waiver and in the proof, and its decisions should more clearly articulate the public interest considerations on which it determines to waive. We affirm here partly because the appellant failed to demonstrate to the Commission, by counter-affidavit, petition for reconsideration, or otherwise, the need for an evidentiary hearing.
 
 
 25
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 In the same order the Commission denied four other requests for waiver of its rules by CATV systems in East Syracuse, Camillus, Solvay and Van Buren, New York, and set them for evidentiary hearing. The Commission found that these systems were "in the very heart of the area upon which new UHF stations must rely heavily for economic support," and that without additional information the Commission could not say that the effect of CATV operations in those communities would be minimal
 
 
 [2]
 47 U.S.C. § 402(b) (1964)
 
 
 [3]
 47 U.S.C. § 402(a) (1964)
 
 
 [4]
 See Second Report and Order, 2 F.C.C. 2d 725 (1966). This court has recently upheld this assertion of jurisdiction. Buckeye Cablevision, Inc. v. F.C.C., 128 U.S.App.D.C. ___, 387 F.2d 220 (decided June 30, 1967).
 
 
 [5]
 A "Grade A contour" is the line representing the service area in which a good picture is available 90 per cent of the time at 70 per cent of receiver locations. A "Grade B contour" is the service area in which a good picture is available 90 per cent of the time at 50 per cent of receiver locationsSee Sixth Report and Order, F.C.C., 17 FED.REG. 3905, 3915 (1952). See also 47 C.F.R. § 73.683-684 (Supp.1967).
 
 
 [6]
 In explicating its regulations, the Commission said:
 "We shall accordingly follow a procedure whereby the signal of a television broadcast station shall not be extended beyond its grade B into the top 100 major markets (as ranked by ARB on the basis of net weekly circulation of the largest station in the market) by a CATV system which has obtained a franchise for operation in such a market, except upon a showing made in an evidentiary hearing that such operation would be consistent with the public interest, and particularly the establishment and healthy maintenance of UHF television broadcast service. In this way, the Commission will be able to explore in depth the details of the proposed CATV operation, the marketing studies which have been made relating to it (by either the CATV or broadcast groups in the area), the present and potential picture as to television broadcasting in the market, the positions and showings of the interested CATV and broadcast parties, the possible plans or potential of the proposed CATV operation for pay-TV, and other important facets. After such exploration, the Commission will be in a position to make an informed judgment directed to the facts of a particular case."
 
 
 [2]
 F.C.C.2d at 782
 
 
 [7]
 In its memorandum opinion and order denying numerous petitions for reconsideration of theSecond Report and Order, in which the CATV rules were promulgated, the Commission considered the interrelationship of the regulations and said:
 "We also adhere to our determination that the predicted grade A contour is, for purposes of the rule, an appropriate criterion for measuring the area within which the importation of distant signals raises public-interest questions. It does not include the much larger areas falling within the grade B contour, as requested by some of the petitioners for reconsideration. Nor is it limited to the immediate environs of the principal community, as sought by others. But the grade A contour generally carves out the essential area upon which UHF operations in the market would usually be based. We recognize that the grade A contour may encompass some localities where, because of the particular circumstances, an evidentiary hearing appears unnecessary. We have already granted waivers of the hearing requirement in some such instances. No standard suggested to us would precisely fit all the situations we are seeking to reach, to the exclusion of all others. The use of the grade A contour, coupled with the procedures for waiver, insures that all proposed distant-signal CATV operations in the area of apparent reasonable concern are brought before us for consideration and such action as may be warranted in the public interest in the particular circumstances."
 
 
 [6]
 F.C.C.2d 309, 318-319 (1967). (Footnote omitted.)
 
 
 [8]
 The application of Channel 30, Inc. was granted on February 2, 1967, prior to the Commission's grant of the challenged waivers
 
 
 [9]
 47 U.S.C. § 214(a) (1964)
 
 
 [10]
 47 U.S.C. § 307(b) (1964)
 
 
 [11]
 See Note 7supra.